Case No. 17-1010

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

SPRING CREEK EXPLORATION & PRODUCTION COMPANY, LLC,
and GOLD COAST ENERGY LLC,

*Plaintiffs-Appellants,*

v.

HESS BAKKEN INVESTMENT II, LLC f/k/a TRZ ENERGY LLC,
and STATOIL OIL & GAS LP f/k/a BRIGHAM OIL & GAS LP,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Colorado
The Honorable Philip A. Brimmer
Case No. 14-cv-00134-PAB-KMT

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

Respectfully submitted,

Tamir I. Goldstein
John W. Mill
Joseph C. Daniels
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 297-2900

*Attorneys for Plaintiffs-Appellants*

October 11, 2017

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..........................................................................1

II.   THE COMPLAINT SUFFICIENTLY ALLEGES A BREACH OF
CONTRACT CLAIM AGAINST TRZ/HESS FOR NOT
ACQUIRING LEASES IN THE AMI ...........................................2

    A.    The AMI Agreement Does Not Contradict the Allegation that
TRZ/Hess Was Obligated to Pursue Leases.........................................3

        1.    The "If" Provision Does Not Contradict TRZ/Hess
Having an Obligation to Pursue Leases.....................................4

        2.    The Broker Provision Supports the Parties' Intent
TRZ/Hess Had an Obligation to Pursue Leases ........................6

        3.    The Second Recital Supports the Parties' Intent
TRZ/Hess Had an Obligation to Pursue Leases ........................6

    B.    The Additional Documents Submitted with Plaintiffs' Motion
for Reconsideration Support Plaintiffs' Allegation that
TRZ/Hess Had an Obligation to Pursue Leases...................................7

        1.    The Letter of Intent and Agreement for Assignment Both
Say TRZ/Hess "Will Acquire" Leases in the AMI....................7

        2.    The Participation Agreement Provides that TRZ/Hess
Will Pursue Leases in the AMI...................................................8

III.  THE DISTRICT COURT ABUSED ITS DISCRETION AND
VIOLATED THE INTERESTS OF JUSTICE BY DENYING THE
MOTION FOR RECONSIDERATION..........................................9

IV.  THE COMPLAINT SUFFICIENTLY ALLEGES A GOOD FAITH
AND FAIR DEALING CLAIM....................................................10

V.   PLAINTIFFS SUFFICIENTLY ALLEGED TORTIOUS
INTERFERENCE WITH CONTRACT.........................................10

VI.     PLAINTIFFS SUFFICIENTLY ALLEGED FRAUDULENT
        CONCEALMENT ........................................................................................11

        A.      Plaintiffs Sufficiently Alleged that TRZ/Hess Had a Duty of
               Disclosure ..........................................................................................12

        B.      The Economic Loss Rule Does Not Bar the Fraudulent
               Concealment Claim ............................................................................14

VII.    THE LAW IMPOSES THE AMI AGREEMENT'S OBLIGATIONS
        ON BRIGHAM/STATOIL ...................................................................15

        A.      The AMI Agreement Meets the Statutory Requirements to Be a
               Covenant Running With the Land ......................................................17

               1.      Golden Did Not Hold that AMI Agreements Cannot Be
                       Covenants Running with the Land ...........................................17

               2.      The North Dakota Supreme Court Would Hold that the
                       Covenants in the AMI Agreement Are Covenants
                       Running with the Land ...............................................................18

        B.      N.D. Cent. Code § 9-03-25 Independently Imposes the
               Obligations of the AMI Agreement on Brigham/Statoil .....................24

        C.      Brigham/Statoil Expressly Assumed the AMI Agreement in
               Separate Agreements Executed and Recorded After the
               TRZ/Hess-Brigham/Statoil Agreement ............................................27

VIII.   A GENUINE ISSUE OF MATERIAL FACT PRECLUDES
        SUMMARY JUDGMENT ON TRZ/HESS'S AFFIRMATIVE
        DEFENSE OF STATUTE OF LIMITATIONS ON PLAINTIFFS'
        BREACH OF CONFIDENTIALITY CLAIM ......................................30

        A.      Plaintiffs' Evidence Shows the Claim Accrued in October 2012
               or at Minimum After December 2010 ................................................31

        B.      Knowledge of a Transaction Is Not Knowledge of TRZ/Hess's
               Breach of Confidentiality ...................................................................34

        C.      A Genuine Issue of Material Fact Exists on Whether All Buyers
               Review Agreements Affecting Leases Before Buying ......................35

D.   Inquiry Notice Does Not Trigger the Discovery Rule ........................ 37

E.   The Evidence that TRZ/Hess Wrongfully Concealed
     Information from Plaintiffs Is Sufficient to Equitably Toll the
     Statute of Limitations .......................................................................... 38

IX.  PLAINTIFFS' WORKING INTEREST DAMAGES ARE
     RECOVERABLE .......................................................................................... 40

X.   CONCLUSION .............................................................................................. 41

# TABLE OF AUTHORITIES

Page

## Cases

Alvardo v. Bolton,
   749 S.W.2d 47 (Tex. 1988)....................................................................28

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)................................................................... 20, 33

Anderson v. Marshall-Malaise Lumber Co.,
   263 N.W. 721 (N.D. 1935) ...............................................................17

Barnes v. Harris,
   783 F.3d 1185 (10th Cir. 2015) ..........................................................3

Beeter v. Sawyer Disposal LLC,
   771 N.W.2d 282 (N.D. 2009) ...........................................................20

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007).............................................................................3

Brody v. Brock,
   897 P.2d 769 (Colo. 1995)................................................................14

Cillo v. City of Greenwood Village,
   739 F.3d 451 (10th Cir. 2013) ..........................................................20

Corwin v. Marney, Orton Invs.,
   843 F.2d 194 (5th Cir. 1988) ............................................................35

Crosby v. Am. Fam Mut. Ins. Co.,
   251 P.3d 1279 (Colo. App. 2010)......................................................31

Designer Direct, Inc. v. DeForest Redevelopment Auth.,
   368 F.3d 751 (7th Cir. 2004) ............................................................40

East Ridge of Fort Collins, LLC v. Larimer and Weld Irr. Co.,
   109 P.3d 969 (Colo. 2005)..................................................................9

FDIC v. Refco Group, Ltd.,
   989 F. Supp. 1052 (D. Colo. 1997)...................................................13

First Nat'l Bank & Tr. Co. v. Sidwell Corp.,
    678 P.2d 118 (Kan. 1984) .......................................................................23

Franklin Bank, N.A. v. Bowling,
    74 P.3d 308 (Colo. 2003) ........................................................................34

Gamble, Simmons & Co. v. Kerr-McGee Corp.,
    175 F.3d 762 (10th Cir. 1999) ..................................................................6

GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381
    (10th Cir. 1997) .......................................................................................3

Giampapa v. Am. Fam. Mut. Ins. Co.,
    64 P.3d 230 (Colo. 2003) ........................................................................40

Golden v. SM Energy Co.,
    826 N.W.2d 610 (N.D. 2013) .............................................. 17, 18, 21, 24, 25, 26

Gottstein v. National Ass'n for the Self Employed,
    53 F. Supp. 2d 1212 (D. Kan. 1999) ......................................................35

Great Rivers Coop. of S.E. Iowa v. Farmland Indus., Inc.,
    120 F.3d 893 (8th Cir. 1997) ..................................................................35

H&H Distributors, Inc. v. B&B Int'l Inc.,
    812 P.2d 659 (Colo. App. 1990) ...................................................... 13, 15

Hutchinson v. Pfeil,
    105 F.3d 562 (10th Cir. 1997) ................................................................31

Jackson v. Alexander,
    465 F.2d 1389 (10th Cir. 1972) ................................................................3

James Barlow Family Ltd. P'ship v. David M. Munson, Inc.,
    132 F.3d 1316 (10th Cir. 1997) ..............................................................28

Johnson v. Riddle,
    305 F.3d 1107 (10th Cir. 2002) ..............................................................19

Khalik v. United Air Lines,
    671 F.3d 1188 (10th Cir. 2012) ................................................................3

Lonesome Dove Petroleum, Inc. v. Nelson,
   611 N.W.2d 154 (N.D. 2000) ...............................................................25

Micale v. Bank One N.A. (Chicago),
   382 F. Supp. 2d 1207 (D. Colo. 2005) .................................................38

Newmont U.S.A. Ltd. v. Insurance Co. of Am.,
   615 F.3d 1268 (10th Cir. 2010) .............................................................6

Salazar v. American Sterilizer Co.,
   5 P.3d 357 (Colo. App 2000) ......................................................... 37, 38

Smith v. Boyett,
   908 P.2d 508 (Colo. 1995) ....................................................................39

Stuart v. Colorado Interstate Gas Co.,
   271 F.3d 1221 (10th Cir. 2001) ...........................................................23

The Superlative Group, Inc. v. WIHO, L.L.C.,
   2014 WL 1385533 (D. Kan. Apr. 9, 2014) .........................................40

U.S. v. Botefuhr,
   309 F.3d 1263 (10th Cir. 2002) ...........................................................18

Wehner v. Schroeder,
   354 N.W.2d 674 (N.D. 1984) ...............................................................28

Westby v. Schmidt,
   779 N.W. 2d 681 (N.D. 2010) ..............................................................25

Westland Oil Dev. Corp. v. Gulf Oil Corp.,
   637 S.W.2d 903 (Tex. 1982) ............................................................ 5, 21

Wheeler v. Southport Seven Planned Unit Development,
   821 N.W.2d 746 (N.D. 2012) ...............................................................22

Wright ex rel. Trust Co. of Am. v. Abbott Laboratories,
   259 F.3d 1226 (10th Cir. 2001) ...........................................................10

**Statutes**

C.R.S. § 13-80-108(6) ..............................................................................34

N.D. Cent. Code § 38-08-01 ....................................................................21

N.D. Cent. Code § 47-04-26 ....................................................... 17, 21, 22

N.D. Cent. Code § 47-19-19 ..............................................................21

N.D. Cent. Code § 9-03-20 ................................................................25

N.D. Cent. Code § 9-03-25 ................................................ 16, 24, 25, 26

N.D. Cent. Code §§ 47-04-24 and -26 ......................... 15, 16, 18, 19, 24

## Rules

Fed. R. Civ. P. 30(b)(6) .....................................................................27

Fed. R. Civ. P. 60(b) ............................................................................9

## Other Authorities

8 Patrick Martin and Bruce Kramer, Williams & Meyers, Oil and Gas
    Law, Manual of Oil and Gas Terms (Lexis/Nexis Matthew Bender
    2016) ....................................................................................... 12, 21

Andrew Scott Graham, "Real or Personal?:  The Area of Mutual
    Interest Covenant in the Williston Basin After Golden v. SM
    Energy Company," 89 N.D. L. Rev. 240, 243 (2013) ........................23

Restatement (Second) of Contracts § 344(b) ...........................................40

Restatement (Second) of Torts § 550 comment b ........................... 13, 15

# I.     INTRODUCTION

The fundamental facts underlying this case are undisputed.  The Area of Mutual Interest ("AMI") Agreement, as part of the Tomahawk Agreement, was for the promotion of the joint development and exploration of the oil and gas reserves in the defined area.  Plaintiffs were promised that TRZ Energy LLC n/k/a Hess Bakken Investment II, LLC ("TRZ/Hess") would pursue leases, free of competition from Plaintiffs, throughout the three-year term of the AMI Agreement, TRZ/Hess would keep the AMI Agreement confidential, and Plaintiffs would receive overriding royalty interests ("ORRI") on all leases acquired in the AMI area and term by TRZ/Hess and its successors and assigns such as Brigham Oil & Gas LP n/k/a Statoil Oil & Gas LP ("Brigham/Statoil").  TRZ/Hess and/or Brigham/Statoil breached each of those promises and caused Plaintiffs tens of millions of dollars in damages.

It is undisputed that Plaintiffs substantially complied with their obligations under the Tomahawk Agreement including not competing for leases in the AMI for three years.  It is undisputed that TRZ/Hess stopped pursuing leases in the AMI by February 2010 because of the TRZ/Hess-Brigham/Statoil Agreement, just four months after their promises to Plaintiffs.  It is undisputed that TRZ/Hess disclosed the AMI Agreement to Brigham/Statoil, without Plaintiffs' consent, <u>before</u> the TRZ/Hess-Brigham/Statoil Agreement.   It is undisputed Brigham/Statoil then

acquired over 2500 acres of leases in the AMI, while Plaintiffs were honoring the non-compete, yet without giving Plaintiffs any ORRI on those leases.

The undisputed intent of the Tomahawk Agreement was that Plaintiffs would receive ORRI on all leases acquired in the AMI by TRZ/Hess and its successors and assigns. That did not happen. The overarching question in this case is whether Plaintiffs have any legal remedy for Defendants' breach of the Tomahawk Agreement and other wrongful conduct.

## II. THE COMPLAINT SUFFICIENTLY ALLEGES A BREACH OF CONTRACT CLAIM AGAINST TRZ/HESS FOR NOT ACQUIRING LEASES IN THE AMI

Defendants do not deny that the Complaint alleges:

- "The parties' intent in entering into the [Tomahawk] Agreement . . . was that [TRZ/Hess] . . . would acquire additional leasehold interests within the Tomahawk Prospect throughout the term of the Agreement." App. 58, ¶15.

- In exchange for Plaintiffs not competing for leases in the AMI, "[TRZ/Hess] would pursue additional leases . . . over the next three years." App. 58, ¶13.

- "In exchange [for Plaintiffs' promises], [TRZ/Hess] would secure additional leases within the Tomahawk Prospect." App. 57, ¶10.

- TRZ/Hess "breach[ed] its agreement with Spring Creek by no longer entering into leases in the Tomahawk prospect." App. 59, ¶18.

- TRZ/Hess "breached its obligations under the [Tomahawk] Agreement . . . [by] failing to acquire new leases within the Tomahawk Prospect during the entire period of the AMI." App. 61, ¶36.

These are well-pleaded facts. They allege the essential elements of a breach of contract claim. On a motion to dismiss, a court must accept these allegations as

true and view them in the light most favorable to Plaintiffs. Barnes v. Harris, 783 F.3d 1185, 1191-92 (10th Cir. 2015). "[T]he 12(b)(6) standard does not require that Plaintiff[s] establish a prima facie case in [their] complaint." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). Rather, all Plaintiffs need to do to survive a motion to dismiss is "'nudge[] [their] claims across the line from conceivable to plausible.'" Id. at 1190 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Applying this standard, the Court must reverse.

## A. The AMI Agreement Does Not Contradict the Allegation that TRZ/Hess Was Obligated to Pursue Leases

TRZ/Hess argues that Plaintiffs' allegations are contradicted by the AMI Agreement and the court does not have to accept them as true. Brief of Appellee Hess Bakken Investments II, LLC ("TRZ/Hess's Brief") at 19. However, this exception to the rule that well-pleaded allegations must be accepted as true does not apply here. The cases cited by TRZ/Hess make clear that allegations must be accepted as true unless they are "contradict[ed]" by a properly considered document, or "at variance with the express terms of an instrument attached to the complaint as an exhibit." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) (emphasis added); Jackson v. Alexander, 465 F.2d 1389, 1390 (10th Cir. 1972) (same). Here, Plaintiffs' allegations are not contradicted by or at variance with the express terms of the AMI Agreement or the entire ten-part Tomahawk Agreement. The Complaint specifically alleges that the

"Agreement" was a multi-part agreement, App. 57, ¶10, which TRZ/Hess does not deny, most of which the Court did not have in deciding the motions to dismiss.

### 1. The "If" Provision Does Not Contradict TRZ/Hess Having an Obligation to Pursue Leases

Defendants primarily rely on one sentence in the ten-part Tomahawk Agreement—the "if" provision in the AMI Agreement—and argue it is inconsistent with TRZ/Hess having a contractual obligation to pursue leases in the AMI. TRZ/Hess's Brief at 17; Brief of Appellee Statoil Oil & Gas LP ("Brigham/Statoil's Brief") at 25. That is not correct. First, this specific sentence applies to TRZ/Hess's obligation to Coachman, not Plaintiffs.[1] Second, TRZ/Hess having a contractual obligation to Plaintiffs to acquire leases in the AMI for three years is completely consistent with saying <u>if</u> TRZ/Hess acquires leases in the AMI it must assign ten percent of those leases to Coachman. There simply is no inconsistency, variance or contradiction.[2]

---

[1] This is a prime example of Defendants' repeated inconsistent positions. Here, Defendants' position is based on a provision specific to Coachman. Yet, as noted below, to survive summary judgment, Defendants argue that portions of the Tomahawk Agreement referring to Coachman are not applicable to Plaintiffs. <u>E.g.</u>, Brigham/Statoil's Brief at 58. Defendants cannot have it both ways.

[2] This is not a novel reading of the AMI Agreement. Courts have long understood that "[i]n an area of mutual interest agreement, the parties attempt to describe a geographic area within which they agree to share certain additional leases acquired by any of them in the future. <u>This necessarily contemplates that oil and gas</u>

TRZ/Hess also misstates Plaintiffs' position. Plaintiffs said that "while TRZ/Hess had an overarching obligation to pursue leases in the AMI area and term, it did not have to acquire any <u>particular</u> lease if the owner would not sell or agree to reasonable terms." Opening Brief at 29. TRZ/Hess omits the word "particular" and misleadingly twists Plaintiffs' statement. TRZ/Hess's Brief at 24. At most, the "if" provision creates some ambiguity.

TRZ/Hess also argues that Plaintiffs did not identify any "written terms" that are ambiguous. TRZ/Hess Brief at 38-39. Not true. The written term that is subject to ambiguity is the use of the word "if". Both the Defendants and the Court claim the only reasonable interpretation of that sentence is that TRZ/Hess had <u>no</u> obligation to acquire leases—but if it did it had to assign an ORRI. That reading strips away the consideration for the non-compete provision. Even TRZ/Hess acknowledges the "'essence' of the AMI Agreement was <u>additional consideration</u> for the sale of the Tomahawk leases in the form of ORRIs in any new leases TRZ acquired, <u>in exchange for Plaintiffs' agreement not to acquire leases within the AMI</u>." TRZ/Hess Brief at 67 (emphasis added). If TRZ/Hess had <u>no</u> obligation to acquire new leases then the consideration for the 3-year non-compete was illusory—that is not a reasonable reading of the AMI.

---

leasehold interests will be conveyed." <u>Westland Oil Dev. Corp. v. Gulf Oil Corp.</u>, 637 S.W.2d 903, 904 (Tex. 1982) (emphasis added).

## 2. The Broker Provision Supports the Parties' Intent TRZ/Hess Had an Obligation to Pursue Leases

The AMI Agreement expressly required TRZ/Hess to retain Spring Creek's lease broker, Diamond Resources, "to acquire interests in the AMI." App. 82, ¶3. This provision supports Plaintiffs' allegation. Defendants minimize the import of the broker provision, and the District Court agreed with them. But the broker provision at a minimum suggests an intent for TRZ/Hess to acquire leases and does not <u>contradict</u> the allegation that TRZ/Hess had an obligation to pursue leases in the AMI.

## 3. The Second Recital Supports the Parties' Intent TRZ/Hess Had an Obligation to Pursue Leases

The AMI Agreement's second recital states "the Parties desire to establish an area of mutual interest covering the Tomahawk Prospect and **provide for the acquisition of interests by [TRZ/Hess].**" App. 81 (emphasis added). The District Court ignored this recital, and Defendants downplay it. However, this Court has made clear that a contract's recitals are important on the issue of intent and must be considered. <u>Newmont U.S.A. Ltd. v. Insurance Co. of North Am.</u>, 615 F.3d 1268, 1275 n.6 (10th Cir. 2010) (under Colorado law, courts must analyze the entire contract and "[r]ecitals . . . may have material influence on the construction of the instrument"); <u>Gamble, Simmons & Co. v. Kerr-McGee Corp.</u>, 175 F.3d 762, 771 (10th Cir. 1999) ("The opening recitals are especially helpful to objectively

analyze the intent of the parties . . . .").  Here, the Court must consider the AMI

Agreement's second recital.  It provides context and perspective on the intent of

the parties.[3]

As shown above and in Plaintiff's Opening Brief at 25-30, nothing in the

AMI Agreement <u>contradicts</u> Plaintiffs' well-pleaded allegations.  Therefore, the

Court must accept these allegations as true, and reverse.

**B.** **The Additional Documents Submitted with Plaintiffs' Motion for Reconsideration Support Plaintiffs' Allegation that TRZ/Hess Had an Obligation to Pursue Leases**

Although the District Court should have accepted Plaintiffs' allegations, any

potential doubt was eliminated when Plaintiffs filed their motion for

reconsideration and submitted the other parts of the Tomahawk Agreement and

TRZ/Hess's letter of intent.

**1.** **The Letter of Intent and Agreement for Assignment Both Say TRZ/Hess "Will Acquire" Leases in the AMI**

"[TRZ/Hess] <u>will</u> acquire oil and gas leases in the Tomahawk Prospect."

App. 343, ¶7(f)(i) (emphasis added); App. 280 ¶4(f)(i).  The Agreement for

Assignment is part of the ten-part Tomahawk Agreement.  App. 278.  The Letter of

Intent was signed six days before, and specifically relates to, the Tomahawk

---

[3] As TRZ/Hess itself later admits in addressing summary judgment, the existence of the non-compete and ORRI provisions are the "essence" of the AMI and show the intent of the parties.  TRZ/Hess's Brief at 67.

Agreement. Brigham/Statoil tries to minimize the import of the letter of intent by arguing it did not make the AMI Agreement a condition of closing. Brighton/Statoil's Brief at 46-47. However, the letter of intent plainly required <u>delivery at closing</u> of the AMI Agreement. App. 342, ¶7(c). App. 341. The words "will acquire" are express, affirmative and unequivocal, not conditional or permissive. Yet, TRZ/Hess argues its obligation to acquire leases was "non-existent." TRZ/Hess's Brief at 17. This is refuted by the fact that two agreements expressly state that TRZ/Hess "will acquire" leases in the AMI. These words are part of the multi-part Tomahawk Agreement and must be considered. The repeated statement that TRZ/Hess "will acquire" leases supports Plaintiffs' allegation that TRZ/Hess had a contractual obligation to do just that—acquire leases in the AMI.

## 2. The Participation Agreement Provides that TRZ/Hess Will Pursue Leases in the AMI

"[T]he parties desire to establish an area of mutual interest covering the Tomahawk Prospect <u>and provide for the acquisition of interests therein by</u> <u>[TRZ/Hess]</u>." App. 270 (emphasis added). This provision in the Participation Agreement further supports Plaintiffs' claim. TRZ/Hess says Plaintiffs were not parties to the letter of intent or the Participation Agreement.[4] TRZ/Hess's Brief at

---

[4] Brigham/Statoil argues there is no "Tomahawk Agreement." <u>See</u> Brigham/Statoil Brief at 24. This is semantics and not true. It is undisputed by Plaintiffs and

37. However, "separate instruments that pertain to the same transaction should be read together . . . <u>even though they are not executed by the same parties</u>." <u>East Ridge of Fort Collins, LLC v. Larimer and Weld Irr. Co.</u>, 109 P.3d 969, 975 (Colo. 2005) (emphasis added). The letter of intent, Participation Agreement, and the Agreement for Assignment clearly pertain to the Tomahawk Agreement, refer to or contain the AMI obligations, must be considered, at a minimum demonstrate an ambiguity, and require reversal.[5]

### III. THE DISTRICT COURT ABUSED ITS DISCRETION AND VIOLATED THE INTERESTS OF JUSTICE BY DENYING THE MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration submitted to the District Court the letter of intent and all ten inter-related agreements making up the Tomahawk Agreement which the Court did not previously have on the motions to dismiss. App. 258-345. After summarily denying the motion for reconsideration as "procedurally improper" for citing Fed. R. Civ. P. 60(b), the District Court recognized its "plenary power to revisit and amend interlocutory orders." App. 660. At that point, fairness, reaching the correct result, and the interests of

---

TRZ/Hess, and found by the District Court, that the ten inter-related agreements were one transaction. App. 5642, n.3.

[5] Plaintiffs argued the Tomahawk Agreement at a minimum is ambiguous on this issue in both Plaintiffs' response to the motion to dismiss, App. 169 n.1, and in Plaintiffs' motion for reconsideration, App. 261-67. The suggestion by TRZ/Hess that Plaintiffs did not make this argument is simply not correct.

justice required the District Court to reconsider. Instead, the District Court (i) refused to consider the rest of the Tomahawk Agreement because it was not "new evidence," and (ii) fundamentally misapprehended Plaintiffs' position and the facts by erroneously stating that Plaintiffs had only argued "the AMI Agreement "unambiguously" obligated [TRZ/Hess] to pursue additional leases." App. 662. This constitutes a "clear error of judgment" and/or "an arbitrary . . . or manifestly unreasonable judgment" by the District Court. <u>Wright ex rel. Trust Co. of Kansas. v. Abbott Laboratories, Inc.</u>, 259 F.3d 1226, 1235-36 (10th Cir. 2001) (citation omitted).

## IV. THE COMPLAINT SUFFICIENTLY ALLEGES A GOOD FAITH AND FAIR DEALING CLAIM

Plaintiffs' covenant of good faith and fair dealing claim is based on TRZ/Hess's obligation to pursue leases in the AMI for three years. TRZ/Hess had an implied duty to exercise in good faith its discretion regarding the <u>manner</u> of pursuing leases. If the Court reverses on the breach of contract claim, the good faith and fair dealing claim should also be reinstated.

## V. PLAINTIFFS SUFFICIENTLY ALLEGED TORTIOUS INTERFERENCE WITH CONTRACT

Brigham/Statoil's main argument against the tortious interference claim is that TRZ/Hess had no obligation to acquire leases. Assuming the Court reinstates the claim that TRZ/Hess breached its obligation to acquire leases, as discussed

above, then the Court also must reinstate Plaintiffs' claim against Brigham/Statoil for tortiously interfering with that contractual obligation. Brigham/Statoil erroneously argues, without any legal support, that Plaintiffs must identify a provision in the TRZ/Hess-Brigham/Statoil Agreement that prevented TRZ/Hess from pursuing and acquiring additional leases. Not so. Plaintiffs must only allege the elements of claim which they indisputably had.

Brigham/Statoil attacks Plaintiffs' other allegations that Brigham/Statoil (i) required TRZ/Hess to keep confidential the TRZ/Hess-Brigham/Statoil Agreement and (ii) intentionally structured it to be able to disclaim the AMI Agreement, by referencing the actual TRZ/Hess-Brigham/Statoil Agreement, which was still not disclosed and not considered as part of the motions to dismiss. Brigham/Statoil's Brief at 30-31. At the motion to dismiss stage, Plaintiffs' allegations must be accepted as true, and Plaintiffs should not be penalized for not precisely conforming their allegations to the specific terms of an agreement that was concealed from them for over four years. Plaintiffs' allegations are sufficient. Moreover, the covenant in the secret undisclosed TRZ/Hess-Brigham/Statoil Agreement was specifically titled as a non-compete. App. 63, ¶50; App. 5763, ¶ 4.

## VI.   PLAINTIFFS SUFFICIENTLY ALLEGED FRAUDULENT CONCEALMENT

The Complaint alleged that Plaintiffs and TRZ/Hess entered into a complex, multi-million dollar oil and gas venture lasting three years, involving the sharing of

confidential information, to develop an oil and gas prospect in a particular geographic area, with one party pursuing oil and gas leases, and the other party receiving royalties on such leases in exchange for not competing for leases with the intent that the parties would mutually profit from oil and gas development.  App. 57-59, ¶¶8-17.[6]  Viewed in the light most favorable to Plaintiffs, these allegations are sufficient to allege a special relationship of trust and confidence between TRZ/Hess and Plaintiffs.  Opening Brief at 5-11, 33, 69 n.25.  At this stage, Plaintiffs need not prove their claim.

A.     **Plaintiffs Sufficiently Alleged that TRZ/Hess Had a Duty of Disclosure**

Contrary to TRZ/Hess's Brief at 27, Plaintiffs did argue below that Plaintiffs and TRZ/Hess had a "special relationship of trust and confidence."  App. 174 ("Spring Creek alleges that [TRZ/Hess] and [Brigham/Statoil] were in a relationship of trust and confidence [with Plaintiffs].");  see also App. 57-59, ¶¶9-16.  Plaintiffs further argued that TRZ/Hess "took advantage of Spring Creek's

---

[6] The essence of an AMI agreement—which Defendants do not dispute—is that the parties agree to share in any oil and gas leases that any of them acquire in the AMI in the future.  8 Patrick Martin and Bruce Kramer, Williams & Meyers, Oil and Gas Law, Manual of Oil and Gas Terms (Lexis/Nexis Matthew Bender 2016) ("Williams & Meyers").  The relationship between parties to an AMI agreement is special because the trust and confidence that one party must have in the other who has promised to share valuable oil and gas interests that it acquires in the future over many years.

trust." App. 174. Plaintiffs did not refine their "special relationship of trust and confidence" argument by specifically saying it was "in essence" akin to "joint venturers combining their resources to explore and develop the oil and gas resources in the AMI." Opening Brief at 33.[7] But they did not have to. Arguments made below properly can be further refined and developed on appeal. That is what happened here. A special relationship of trust and confidence gives rise to a duty to disclose. <u>FDIC v. Refco Group, Ltd.</u>, 989 F. Supp. 1052, 1081-82 (D. Colo. 1997); <u>H&H Distributors, Inc. v. BBC Int'l Inc.</u>, 812 P.2d 659, 662 (Colo. App. 1990).[8]

Plaintiffs sufficiently alleged that TRZ/Hess intentionally concealed material facts from Plaintiffs. App. 59-60, ¶¶20-22; App. 63-64, ¶¶56, 59. These allegations must be accepted as true. TRZ/Hess's argument that there was no concealment (TRZ/Hess's Brief at 31 n.9) goes to the merits of the claim and is not appropriate on a motion to dismiss.

---

[7] Plaintiffs are not arguing that they and TRZ/Hess formed a formal or legal joint venture. That is not required to have a duty to disclose. All that is required is a "special relationship of trust and confidence."

[8] Plaintiffs inadvertently omitted "App." from their original citation to <u>H&H Distributors</u>.

**B.** **The Economic Loss Rule Does Not Bar the Fraudulent Concealment Claim**

The fraudulent concealment claim arises from an independent duty under tort law and is not barred by the economic loss rule. The <u>Restatement (Second) of Torts</u> ("Restatement") § 550 comment b closely describes the situation here—after the parties' relationship had begun—TRZ/Hess intentionally concealed material information that prevented or frustrated Plaintiffs from making an investigation that would have disclosed material facts (the terms of the TRZ/Hess-Brigham/Statoil Agreement, TRZ/Hess had stopped acquiring leases, and that Brigham/Statoil was not going to be giving Plaintiffs ORRI). App. 63-64, ¶¶56-61; Opening Brief at 33-34. When Plaintiffs asked TRZ/Hess for the terms of its agreement with Brigham/Statoil, TRZ/Hess refused to provide it and affirmatively misrepresented that it could not be disclosed. Opening Brief at 34. TRZ/Hess's "false denial of knowledge or information . . . may subject [TRZ/Hess] to liability as fully as if [it] had expressly misstated the facts, [because] its effect upon [Plaintiffs] was to lead [them] to believe that the facts do not exist or cannot be discovered." <u>Restatement</u> § 550 cmt. b. TRZ/Hess's duty to disclose material information affecting TRZ/Hess's relationship with Plaintiffs, and not frustrate Plaintiffs' investigation, arises from tort law. <u>Brody v. Brock</u>,

897 P.2d 769, 776 (Colo. 1995); <u>H&H Distributors</u>, 812 P.2d at 662-63,[9] <u>Restatement</u> § 550. It is not in the Tomahawk Agreement. Thus, the economic loss rule does not apply and the District Court's sole basis for dismissing the fraudulent concealment claim is erroneous as a matter of law.[10]

## VII. <u>THE LAW IMPOSES THE AMI AGREEMENT'S OBLIGATIONS ON BRIGHAM/STATOIL</u>

The law frequently imposes obligations on parties that they would prefer to avoid. Such is the case here with respect to Brigham/Statoil and its obligation to assign Plaintiffs' ORRI on the 2,500 acres of leases that Brigham/Statoil acquired in the AMI from February 2010 to October 2012.

There is no question that Brigham/Statoil did not want, and tried to avoid, the obligations of the AMI Agreement in the TRZ/Hess-Brigham/Statoil Agreement.[11] But that is not the end of the story. No party can avoid obligations that the law imposes on it. Here, North Dakota statutes, including N.D. Cent. Code

---

[9] Contrary to the implication by Brigham/Statoil, the fact <u>H&H Distributors</u> came out prior to the adoption of the economic loss rule in no way changes the holding that the duty is <u>independent</u> of the contract and arises in tort.

[10] Revival of either the fraudulent concealment or tortious interference with contract claims requires the revival of Plaintiffs' conspiracy claim.

[11] Brigham/Statoil spends many pages arguing its intent in the TRZ/Hess-Brigham/Statoil Agreement. But its intent, no matter how strongly held, how cleverly drafted or how long concealed, does not negate obligations imposed by law.

§§ 47-04-24 and -26 (covenants running with the land) and N.D. Cent. Code § 9-03-25 (accepting benefits of a transaction deemed acceptance of obligations) and common law, impose as a matter of law the AMI Agreement's obligations on Brigham/Statoil. Opening Brief at 45-59.

Regardless of its intent in the TRZ/Hess-Brigham/Statoil Agreement, pursuant to §§ 47-04-24 and -26, by subsequently taking title to the Spring Creek leases Brigham/Statoil became bound by the obligations that ran with those leases, including the AMI Agreement's obligation to assign Plaintiffs ORRI. This existing legal obligation could not be avoided, overridden or invalidated by the TRZ/Hess-Brigham/Statoil Agreement. Similarly, by knowingly accepting the benefits of the Tomahawk Agreement, Brigham/Statoil, by law, is deemed to have accepted the obligations under § 9-03-25. In addition, while Brigham/Statoil did not voluntarily assume the AMI obligations in the TRZ/Hess-Brigham/Statoil Agreement, it did expressly assume the obligations, and did not disclaim them, in the three subsequent agreements and conveyances it executed from April 2010 to December 2010.

Thus, for three independent reasons, Brigham/Statoil was legally obligated to give Plaintiffs ORRI on the new leases it acquired in the AMI, and Brigham/Statoil breached the AMI Agreement by not doing so. The Court should reverse the denial of Plaintiffs' motion for partial summary judgment on liability

and direct the District Court to enter judgment on liability for Plaintiffs, or, at a minimum, hold there are genuine issues of material fact.

**A.    The AMI Agreement Meets the Statutory Requirements to Be a Covenant Running With the Land**

North Dakota specifies the requirements for a covenant to run with the land by statute: (i) the covenant must directly benefit the property, and (ii) be contained in a grant of an estate in real property. N.D. Cent. Code § 47-04-26. When covenants meet these requirements "they will be given force and effect." Anderson v. Marshall-Malaise Lumber Co., 263 N.W. 721, 723 (N.D. 1935).

**1.    _Golden_ Did Not Hold that AMI Agreements Cannot Be Covenants Running with the Land**

In Golden v. SM Energy Co., 826 N.W.2d 610 (N.D. 2013), the North Dakota Supreme Court did <u>not</u> hold that AMI agreements do not, and can never, run with the land. Brigham/Statoil's argument that it did is simply incorrect, and would be inconsistent with North Dakota law and precedent.

The facts and circumstances surrounding AMIs will vary. For instance, the AMI agreement in Golden was contained in a 1970 letter agreement. 826 N.W.2d at 613. The 30 plus year-old letter agreement provided that Mr. Golden was to receive a four percent overriding royalty on all leases acquired in the AMI. Id.

The parties in Golden stipulated that the AMI clause in their 1970 letter agreement was not a covenant running with the land and was instead a personal

covenant. Id. at 615. From the Golden opinion, nothing indicates that the letter agreement was in a grant, as required, or had a provision stating that it was intended to be a covenant running with the land, or that it was binding on successors and assigns. Id. at 613-19. This distinguishes the AMI in Golden from the AMI in the instant case, and likely explains the parties' stipulation.

A court must accept the stipulations of the parties and only decide the issues before it. An issue is not "actually litigated if it is the subject of a stipulation between the parties." U.S. v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002) (citation omitted). Critically, the Golden court never cited N.D. Cent. Code §§ 47-04-24 and -26, because it did not have to. The issue was not before it. Thus, Golden did not decide or even address the issue of whether that AMI agreement, or any other AMI agreement, can satisfy the requirements to be a covenant running with the land. Furthermore, Golden says nothing about how the North Dakota Supreme Court would rule if it was presented with the issue.

## 2. The North Dakota Supreme Court Would Hold that the Covenants in the AMI Agreement Are Covenants Running with the Land

The North Dakota Supreme Court has never addressed the issue of whether any particular AMI agreement can be a covenant running with the land. As shown above and in Plaintiffs' Opening Brief, the District Court's order that Golden decided the issue misstates the law and is erroneous. With no state court holding

on point, this Court must predict what the North Dakota Supreme Court would hold if it were to decide the issue. Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002).

The North Dakota Supreme Court would look to the North Dakota statutes on covenants running with the land, N.D. Cent. Code §§ 47-04-24 and -26, to decide this issue. This Court should look to these statutes as well. Nothing in these statutes indicates an AMI agreement—or any other type of agreement—cannot be a covenant running with the land if it satisfies the two requirements. Nothing in these statutes suggests there are any special requirements for an AMI to run with the land. These statutes simply provide that to run with the land, covenants in any type of agreement must meet two requirements: (i) the covenants must directly benefit the real property, and (ii) the covenants must be contained in a grant of real property. Id.

The issue is not whether AMI agreements in general run with the land, but whether the AMI Agreement at issue runs with the land. Here, Plaintiffs and Brigham/Statoil disagree on whether the covenants in the AMI Agreement "directly benefitted" the Spring Creek Leases. Substantial and undisputed evidence supports Plaintiffs' position that the AMI Agreement covenants directly benefitted the Spring Creek Leases. Opening Brief at 47-48.

With respect to Plaintiffs' appeal of the District Court's grant of summary judgment for Brigham/Statoil, the Court must believe this evidence and view it in the light most favorable to Plaintiffs.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 269 (1986); Cillo v. City of Greenwood Village, 739 F.3d 451, 461 (10th Cir. 2013).

Importantly, Brigham/Statoil does not cite any evidence supporting its position that the AMI Agreement covenants did not directly benefit the Spring Creek Leases.  This omission is particularly telling with respect to Plaintiffs' evidence that the AMI Agreement covenants "increased the value of the Spring Creek Leases."  Opening Brief at 48.  It is hard to argue that making a property more valuable is not a "direct benefit" to that property.  This alone satisfies the "direct benefit" requirement of § 47-04-26.

Brigham/Statoil instead relies on Beeter v. Sawyer Disposal LLC, 771 N.W.2d 282 (N.D. 2009) to argue that the AMI Agreement did not benefit the land. The facts of Beeter are not applicable here because it did not involve an AMI, but rather dealt with an agreement to pay 6% of revenues from a landfill business.[12]

---

[12] Brigham/Statoil incorrectly states that "Appellants notably fail to cite or discuss Beeter in their brief."  Brigham/Statoil's Brief at 44.  Plaintiffs cited Beeter at the very start of their running-with-the-land argument.  Opening Brief at 46.  Beeter is relevant for only two points as cited by Plaintiffs; (1) intent alone is not enough; (2) the North Dakota Supreme Court applies the statutes when evaluating if a covenant runs with the land.

The Court concluded that the right to a percentage of a business' revenue did not benefit the land itself. An AMI is different because the purpose of an AMI is to help promote the efficient and economic development of oil and gas interests, which is the public policy of North Dakota. N.D.C.C. § 38-08-01 ("It is hereby declared to be in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state in such a manner as will prevent waste; . . . and to provide for the operation and development of oil and gas properties in such a manner that a greater ultimate recovery of oil and gas be had . . . ."); Westland, 637 S.W.2d at 904; Williams & Meyers.

Brigham/Statoil now also challenges whether the AMI covenants are "in a grant of an estate in real property," arguing that incorporation is not enough.[13] Brigham/Statoil cites no law that supports its argument, and the cases it does cite specifically contradict its position. Brigham/Statoil's Brief at 58.

Incorporation by reference is common and well-accepted, and North Dakota law provides that the "record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons." N.D. Cent. Code

_____

[13] The District Court did not find or conclude that the AMI Agreement was not contained in a grant of an estate in real property; instead the District Court's decision was based on the conclusion that Golden held that AMI agreements can never run with the land.

§ 47-19-19; <u>Wheeler v. Southport Seven Planned Unit Development</u>, 821 N.W.2d 746, 755 (N.D. 2012) (property owner was subject to covenants in separately recorded PUD declaration that was referenced and incorporated into warranty deed).

The recorded Assignment, Bill of Sale and Conveyance ("First Assignment") (App. 765-81) that conveyed ownership of the Spring Creek Leases from Plaintiffs to TRZ/Hess, undisputedly is a "grant of an estate in real property." The chain from the First Assignment to the AMI Agreement is clear and direct:

- The First Assignment "is made subject to that certain Agreement for Exercise of Option to Purchase dated October 8, 2009 by and between [Plaintiffs] and [TRZ/Hess] [("Agreement for Exercise")]." App. 766, ¶B.

- The Agreement for Exercise, in turn, expressly references the AMI Agreement. App. 1728, ¶7(c).

The recorded First Assignment states that it is expressly subject to the Agreement for Exercise. Thus, it is absolutely clear that title to the Spring Creek Leases is subject to the terms and conditions of the Agreement for Exercise. The Agreement for Exercise expressly references the AMI Agreement. By these express references, the AMI Agreement is incorporated into the First Assignment, i.e., the recorded conveyance of title to the Spring Creek Leases. This satisfies the requirement of § 47-04-26 that the covenant be "in" a conveyance of real property.

In addition, as discussed in more detail below, and in Opening Brief at 53-55, the Second Assignment and the other two subsequent ORRI Assignments

22

specifically reference and are made "subject to" the AMI Agreement. Brigham/Statoil repeatedly acknowledges that the three ORRI Assignments are grants of real property and "burdened the Existing Leases when Statoil acquired them . . . ." Brigham/Statoil's Brief at 53.

Moreover, in predicting a state supreme court's determination, this Court can "consider all resources available, including decisions of . . . other state courts and federal courts, in addition to the general weight and trend of authority." Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001) (citation omitted). The weight of authority from other oil-producing states holds that AMI agreements are covenants running with the land. Opening Brief at 50-51 (citing cases). Brigham/Statoil asserts these cases from other states are "irrelevant." Brigham/Statoil's Brief at 44. Not so. Westland, Shore, Anderson, TransTexas and Kincaid (cited by Plaintiffs) all support the conclusion that an AMI agreement is a covenant running with the land.[14] See also Andrew Scott Graham, "Real or Personal?: The Area of Mutual Interest Covenant in the Williston Basin After

---

[14] Brigham/Statoil argues that First Nat'l Bank & Tr. Co. v. Sidwell Corp., 678 P.2d 118, 126-27 (Kan. 1984) held an AMI is purely personal. Brigham/Statoil's Brief at 42. However, Sidwell says nothing about the issue of covenants running with the land. Sidwell dealt with a 1971 letter agreement and nothing in the opinion suggests it was intended to run with the land. Id. at 121-27.

*Golden v. SM Energy Company*," 89 <u>N.D. L. Rev.</u> 240, 243 (2013) ("Graham");
Opening Brief at 48-52.

Considering everything, the North Dakota Supreme Court likely would hold that in this case the covenants in the AMI Agreement are covenants running with the land. Because these covenants run with the land, when Brigham/Statoil took title to the Spring Creek Leases, N.D. Cent. Code §§ 47-04-24 and -26 imposed the AMI Agreement's covenants on Brigham/Statoil <u>regardless of its desire to avoid them</u>. Thus, the Court must reverse the District Court's grant of summary judgment for Brigham/Statoil, reverse the District Court's denial of Plaintiffs' cross-motion for summary judgment, and direct the District Court to enter judgment on liability for Plaintiffs. Alternatively, at a minimum, there are factual issues the jury must decide on whether the covenants in the AMI Agreement satisfy the statutory requirements.

**B.**     <u>**N.D. Cent. Code § 9-03-25 Independently Imposes the Obligations of the AMI Agreement on Brigham/Statoil**</u>

The second North Dakota statute that imposes the AMI Agreement's obligations on Brigham/Statoil is N.D. Cent. Code § 9-03-25. "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." N.D. Cent. Code § 9-03-25. Brigham/Statoil does not contest that it knew the facts relating to the obligations of the AMI Agreement.

24

Brigham/Statoil's Brief at 62-68.  Undisputed evidence shows that Brigham/Statoil accepted the benefits.  Opening Brief at 56-59.  Thus, if this case does not satisfy the requirements of § 9-08-25, nothing does and the statute has no meaning.

Brigham/Statoil incorrectly argues that § 9-03-25 is limited to offer and acceptance.  This is clearly not the case.  The plain language of § 9-03-25 is not so limited.  <u>Lonesome Dove Petroleum, Inc. v. Nelson</u>, 611 N.W.2d 154, 160-61 (N.D. 2000), cited by Brigham/Statoil, dealt with offer and acceptance, but the court applied § 9-03-20 to that issue and nothing in the case says § 9-03-25 only applies to offer and acceptance.  Moreover, § 9-03-25 has been applied in the same context as here.  For example, in <u>Westby v. Schmidt</u>, 779 N.W. 2d 681, 688-89 (N.D. 2010), the court held that because a corporation accepted the benefits of a contract entered into by an individual, under § 9-03-25 the corporation was deemed to have accepted the contract's obligations.  Furthermore, the issue and application of § 9-03-25 in <u>Golden</u> was not an offer and acceptance, but a voluntary acceptance of the benefits, as here.  This shows that § 9-03-25 is broader than Brigham/Statoil asserts.

Brigham/Statoil then argues that the court in <u>Golden</u> rejected the potential application of § 9-03-25.  Quite the opposite.  The court in <u>Golden</u> applied the statute in this context, and remanded the case for the factual determination of the existence of "extrinsic evidence of conduct after completion of the transaction that

suggests a voluntary acceptance of the benefit of the transaction." 826 N.W.2d at 617-618. Here, Plaintiffs <u>have</u> such evidence—which is undisputed. Opening Brief at 57-58 (Brigham/Statoil's acceptance of the benefits of the Joint Operating Agreement ("JOA") that was part of the Tomahawk Agreement, Brigham/Statoil's post-transaction conduct of purchasing leases in the AMI totaling over 2500 acres while accepting the benefits of Plaintiffs not competing against it, and accepting Plaintiffs' confidential information).

As to the benefits of the JOA, Brigham/Statoil's acceptance was explicit, and is not disputed. Thus, it is undisputed Brigham/Statoil <u>knew</u> of the Tomahawk Agreement obligations, and having such knowledge, expressly accepted the benefits.[15] Thus, to not apply § 9-03-25 here would completely nullify the statute.

Alternatively, as in <u>Golden</u>, "whether one has voluntarily accepted a benefit of a transaction under N.D.C.C. § 9-03-25 is a question better suited for trial before

---

[15] Brigham/Statoil attempts to dance around this undisputed fact by arguing the JOA only applies to Coachman. Brigham/Statoil's Brief at 58. First, it was still a benefit of the Tomahawk Agreement. Second, this ignores the fact that the parties to the Tomahawk Agreement all agree it should be viewed together, and is directly contradicted by Brigham/Statoil's earlier position that the "if" clause that applies only to Coachman must be interpreted to apply to Plaintiffs. Brigham/Statoil's argument that the simultaneously executed ten-part Tomahawk Agreement should not be read together, is directly contradicted by its position that the three Assignments, executed up to nine months later, after numerous intervening events, and with different terms, must somehow be construed as part of the TRZ/Hess-Brigham/Statoil Agreement.

a trier of fact than for summary judgment disposition." 826 N.W.2d at 618.

### C. Brigham/Statoil Expressly Assumed the AMI Agreement in Separate Agreements Executed and Recorded After the TRZ/Hess-Brigham/Statoil Agreement

In response, Brigham/Statoil's main argument is that the disclaimer in the TRZ/Hess-Brigham/Statoil Agreement controls. Brigham/Statoil does not dispute that the Second Assignment does not disclaim any obligations under the AMI Agreement; instead it argues that the disclaimer in the TRZ/Hess-Brigham/Statoil Agreement must be read into the subsequent Second Assignment, and the other two later assignments. That argument is both legally and factually flawed.

First, Statoil completely ignores its own 30(b)(6) testimony, provided by the actual signatory to the TRZ/Hess-Brigham/Statoil Agreement and Second Assignment, that the original agreement and a subsequent assignment are "separate agreements." Opening Brief at 54. This is binding on Brigham/Statoil and conclusive. No further discussion should be needed. Nonetheless, the Agreements are also separated by months (up to nine months between the February 2010 TRZ/Hess-Brigham/Statoil Agreement and the December 2010 Third assignment); contain different terms (the express assumption of the JOA in the Second assignment is not in the TRZ/Hess-Brigham/Statoil Agreement); and are separated by significant intervening events (the three ORRI Assignments that Statoil acknowledges "burden" Spring Creek Leases and that explicitly are "subject to"

the AMI Agreement were all executed and recorded after the TRZ/Hess-Brigham/Statoil Agreement).

Second, Brigham/Statoil fails to address two cases cited by Appellants, James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1321 (10th Cir. 1997) and Wehner v. Schroeder, 354 N.W.2d 674, 678 (N.D. 1984), which hold that subsequently-recorded documents override the terms of prior agreements.  Opening Brief at 54.

Brigham/Statoil's failure to even address these issues is telling because both are fatal to its argument that the language in the TRZ/Hess-Brigham/Statoil Agreement must be read into the Second Assignment.

Brigham/Statoil and the District Court misapply the merger doctrine to avoid the clear language of the ORRI Assignments.  Brigham/Statoil's Brief at 53-55; App. 5662-5663.  The North Dakota Supreme Court explained the merger doctrine in Wehner:

> As a general rule . . . a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed . . . . Accordingly, although the terms of preliminary agreements may vary from those contained in the deed, the deed alone must be looked to for determination of the rights of the parties . . . .

Wehner, 354 N.W.2d at 679 (internal quotations omitted); see also Alvarado v. Bolton, 749 S.W.2d 47, 48 (Tex. 1988) ("When a deed is delivered and accepted as

28

performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties."). In short, the merger doctrine provides that, as a general rule, when a deed or conveyance is executed any prior contractual terms are merged into the deed and extinguished.

Here, the Second Assignment is not just an agreement, but it is a conveyance of real property. Given the Second Assignment makes no disclaimer of the AMI Agreement or the Tomahawk Agreement, and makes no effort to incorporate (or even make a single reference to) the TRZ/Hess-Brigham/Statoil Agreement, the terms of the TRZ/Hess-Brigham/Statoil Agreement cannot be read into or taken together with the Second Assignment; instead the Second Assignment stands on its own.

Brigham/Statoil misapplies the merger doctrine when it relies on the sentence in the ORRI Assignment that states: "The Agreement and the AMI contain certain representations, warranties and agreements between the Parties, some of which survive the delivery of this Assignment . . . and shall not be merged into this Assignment or be otherwise negated by the execution or delivery of this Assignment." App. 1865, B. Brigham/Statoil's argument that this sentence carves out the obligations in the AMI to assign new overrides is backwards. Instead of negating the terms of the AMI, this sentence specifically preserves them from

being "merged" out of existence. Accordingly, the ORRI Assignments are expressly made "subject to" the AMI Agreement.

In other words, the ORRI Assignments were made "subject to" the AMI Agreement, and the AMI Agreement was not merged into and extinguished by the ORRI Assignments. The purpose of the sentence cited by Brigham/Statoil is not to exclude any obligations under the AMI Agreement, but make clear the ORRI Assignments (which Brigham/Statoil admits it is obligated by) are subject to the AMI Agreement.

Brigham/Statoil further argues that the reference in the Second Assignment to overriding royalties only includes overrides that were owed to TRZ/Hess, not overrides owed by TRZ/Hess. While Appellants disagree with Brigham/Statoil's interpretation, it is a moot point because Brigham/Statoil admits it is and has been bound by the ORRI Assignments (and it has been making payments on those ORRIs for years).

Therefore, Brigham/Statoil expressly assumed the AMI Agreement when it executed and recorded the Second Assignment and the next two assignments.

## VIII. A GENUINE ISSUE OF MATERIAL FACT PRECLUDES SUMMARY JUDGMENT ON TRZ/HESS'S AFFIRMATIVE DEFENSE OF STATUTE OF LIMITATIONS ON PLAINTIFFS' BREACH OF CONFIDENTIALITY CLAIM

The briefs present conflicting views of the evidence regarding when Plaintiffs discovered or reasonably should have discovered TRZ/Hess's breach of

the confidentiality provision. TRZ/Hess does not disagree that the statute of limitations is an affirmative defense, TRZ/Hess has the burden of proof, and when a claim accrues generally is a fact question for the jury. TRZ/Hess "must demonstrate that no disputed issues of material fact exists regarding the affirmative defense." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). Summary judgment in favor of a defendant based on statute of limitations is only appropriate "if the undisputed facts clearly show when a plaintiff discovered or should have discovered the [claim]." Crosby v. Am. Fam Mut. Ins. Co., 251 P.3d 1279, 1283 (Colo. App. 2010). Such is not the case here.

A.  **Plaintiffs' Evidence Shows the Claim Accrued in October 2012 or at Minimum After December 2010**

Plaintiffs presented evidence that they did not discover TRZ/Hess's breach of the confidentiality provision in the AMI Agreement until after October 30, 2012. Opening Brief at 61-62. For summary judgment, this evidence must be believed, and it shows that the breach of confidentiality claim is timely as to both Spring Creek and Gold Coast.

Alternatively, at a minimum, Plaintiffs presented evidence that the claim accrued after December 2010. Opening Brief at 62-63. This evidence must be believed and it shows that at a minimum Spring Creek's breach of confidentiality claim is timely.

TRZ/Hess does not respond to and/or does not provide any valid basis for

the Court to disregard the evidence cited:

- On or before September 18, 2012 Plaintiffs had no knowledge that TRZ/Hess had breached the confidentiality provision.  App. 5011, ¶26;[16] App. 5317, ¶13.

- The October 30, 2012 letter from Brigham/Statoil's counsel is what caused Plaintiffs to suspect a breach had occurred.  App. 5011-12, ¶28; App. 5203 at 198:13-201:17; App. 5191 at 291:20-292:1; App. 5310, ¶7; App. 5263-64.

- Gold Coast did not know of or suspect a breach until after the Complaint was filed in December 2013.  App. 5317, ¶15.

- On December 23, 2010, Plaintiffs "did not know, did not suspect, and did not have any information suggesting" a breach had occurred.  App. 5008, ¶15; App. 5316, ¶9.

- In January/February 2011, Plaintiffs "believed that TRZ/Hess . . . had complied with its obligations under the AMI Agreement's confidentiality provision."[17] App. 5008-09, ¶16; App. 5316, ¶10.

---

[16] TRZ/Hess attacks paragraphs 16 and 26 of Ms. Weissner's declaration as "self-serving" and "conclusory."  But as the V.P. of Land and Land Manager for Spring Creek, Ms. Weissner clearly had sufficient knowledge of the matters in her declaration.  App. 5005.  There is no conflict between when Mr. Coleman purportedly learned of the TRZ/Hess-Brigham/Statoil <u>transaction</u> and when Spring Creek had knowledge of TRZ/Hess's <u>breach</u> of the AMI Agreement's confidentiality provision.

[17] Brigham/Statoil argues Plaintiffs should have known of the breach as of February 2011 due to an email from Brigham/Statoil.  Brigham/Statoil's brief at 17 (citing App. 4369).  This email in fact proves otherwise and supports Plaintiffs' affidavits that they did not know of the breach.  The first email from Ogden Coleman on behalf of Spring Creek specifically asks Brigham/Statoil to waive the non-compete—showing Spring Creek's expectation in January 2011 that Statoil took assignment of the AMI Agreement.  In Ken Treaccar's response for Brigham/Statoil he <u>agreed</u> to the waiver (implying Brigham/Statoil was subject to

- Three witnesses testified that knowing TRZ/Hess had sold leases to Brigham/Statoil did <u>not</u> cause them to believe TRZ/Hess had disclosed the AMI Agreement.  Opening Brief at 67.

This evidence must be believed.  <u>Anderson</u>, 477 U.S. at 269.  It is not surprising that TRZ/Hess attacks or ignores this evidence because it means that the summary judgment for TRZ/Hess on statute of limitations must be reversed.  What is surprising, even somewhat shocking, is that the District Court so dramatically departed from the rules for summary judgment in each of its multiple progressive inferences it made for TRZ/Hess.

TRZ/Hess relies on one snippet of Mr. Coleman's deposition testimony to argue when he learned of the breach.  TRZ/Hess's Brief at 53 (citing App. 3769 at 296:7-20).  But all of Mr. Coleman's testimony must be considered.  Read fairly, and viewed in the light most favorable to Plaintiffs as the nonmovants, all of Mr. Coleman's testimony makes clear that he did not know of the breach until the October 30, 2012 letter from Brigham/Statoil's counsel.  App. 5191-5192; App. 5315, ¶7.

---

the AMI Agreement) and said only that <u>some</u> of the agreements were excluded (and not mentioning or indicating the AMI Agreement was excluded).

## B.     Knowledge of a Transaction Is Not Knowledge of TRZ/Hess's Breach of Confidentiality

TRZ/Hess's argument rests on the fundamentally flawed factual premise that knowledge of a transaction between TRZ/Hess and Brigham/Statoil is the same thing as knowledge of TRZ/Hess's breach of the confidentiality provision. These are two different things and knowledge of one is not knowledge of the other. What matters is "the date the breach [was] discovered or reasonably should have been discovered." C.R.S. § 13-80-108(6) (emphasis added). TRZ/Hess starts out correctly stating that the issue is discovery of the breach. TRZ/Hess's Brief at 43 ("when Plaintiffs knew or should have known of [TRZ/Hess's] disclosure to [Brigham/Statoil]"). Thereafter, however, TRZ/Hess switches horses and repeatedly focuses on when Plaintiffs allegedly discovered the TRZ/Hess-Brigham/Statoil transaction.[18] TRZ/Hess never presents evidence of knowledge of the breach.

TRZ/Hess's alternative "constructive notice of public information" argument similarly fails. First, publicly-recorded documents give constructive notice to subsequent purchasers. Franklin Bank, N.A. v. Bowling, 74 P.3d 308, 312 (Colo.

---

[18] Gold Coast does not dispute that no later than September 13, 2010, Gold Coast knew TRZ/Hess had sold some leases in the Tomahawk Prospect to Brigham/Statoil. When Spring Creek knew TRZ/Hess had sold some leases in the Tomahawk Prospect is a disputed factual issue. Opening Brief at 64.

2003). Plaintiffs are not subsequent purchasers of the leases. Second, courts refuse to impute to a plaintiff constructive knowledge of public documents. <u>Great Rivers Co-op. of S.E. Iowa v. Farmland Indus., Inc.</u>, 120 F.3d 893, 897 (8th Cir. 1997) (refusing to automatically impute to plaintiff constructive knowledge of any public records or public information); <u>Corwin v. Marney, Orton Invs.</u>, 843 F.2d 194, 198 (5th Cir. 1988) (state law imposing constructive knowledge of publicly-filed records for state law purposes insufficient to conclude as matter of law plaintiff "should have known" of information in them); <u>Gottstein v. National Ass'n for the Self Employed</u>, 53 F. Supp. 2d 1212, 1217 (D. Kan. 1999) ("declin[ing] to adopt a blanket rule which charges plaintiffs with constructive knowledge of all public information").

TRZ/Hess's next argument that a document footer gave Plaintiffs knowledge of when TRZ/Hess stopped acquiring leases is disputed even by the witnesses who signed those documents. App. 5007, ¶¶8-9; App. 5309-10, ¶¶5-6; App. 5314-15, ¶¶4-5. In any event, neither of these alternative arguments shows knowledge of the <u>breach</u> of the confidentiality provision <u>before</u> the TRZ/Hess-Brigham/Statoil Agreement.

### C. <u>A Genuine Issue of Material Fact Exists on Whether All Buyers Review Agreements Affecting Leases Before Buying</u>

The next step in TRZ/Hess's cascading knowledge theory is the assertion that Plaintiffs knew that all prospective lease buyers review agreements burdening

the leases before buying them. TRZ/Hess's assertion that this is undisputed is incorrect. Plaintiffs absolutely dispute it. Plaintiffs presented evidence that some buyers of oil and gas leases do <u>not</u> review all agreements affecting those leases before buying them. Opening Brief at 66 (citing testimony by Mr. Coleman, App. 3727 at 33:13-24).[19] While Plaintiffs acknowledged that there is evidence going the other way, as the nonmovants, Plaintiffs' evidence must be believed and it creates a genuine issue of material fact on this issue.

Moreover, TRZ/Hess's argument overlooks the fact that the AMI Agreement has a confidentiality provision. TRZ/Hess makes much of Mr. Coleman's testimony that he would have expected TRZ/Hess to provide the AMI Agreement to the buyer. TRZ/Hess's Brief at 49-50. However, TRZ/Hess does not tell the whole story. TRZ/Hess conveniently omits to mention the very next question and his answer:

> Q. Is there any problem with that [TRZ/Hess providing the agreements to the buyer]?
>
> A. Yeah. If there's a confidentiality, they would have to come to me and ask for approval before I would let them have it.

App. 3760 at 235:12-15. In other words, when there is a confidentiality provision the seller <u>cannot</u> provide the agreements to the buyer without the other party's

---

[19] Mr. Coleman's testimony is more than a "passing observation," and no more a passing observation than the other statement relied on by TRZ/Hess and the Court. TRZ/Hess's Brief at 50; App. 5671.

consent.[20]  Plaintiffs knew that TRZ/Hess had agreed to keep the AMI Agreement confidential from third parties and competitors like Brigham/Statoil.  Plaintiffs had a right to expect that TRZ/Hess would honor its obligations.[21]  The Court cannot accept TRZ/Hess's "you should have known we would disclose it" argument without reading out of existence every confidentiality provision in every contract.

### D.    Inquiry Notice Does Not Trigger the Discovery Rule

TRZ/Hess's statute of limitations argument also rests on a flawed legal premise.  Multiple times, TRZ/Hess argues that Plaintiffs at least knew enough that they should have inquired further.  TRZ/Hess's Brief at 44 ("These facts would have led reasonable people in Plaintiffs' position to believe the AMI Agreement might have been disclosed to [Brigham/Statoil] and led them to inquire further") (emphasis added), 43, 54.[22]  This argument is at least a tacit acknowledgment by TRZ/Hess that knowledge of the transaction, and even that buyers may want to review the agreements, is not enough to start the statute of limitations running.

---

[20] The timing of the disclosure is key.  The disclosure before the TRZ/Hess-Brigham/Statoil Agreement is what allowed Brigham/Statoil to try and avoid the AMI Agreement and set this whole case in motion.  Opening Brief at 19.

[21] This is confirmed by the undisputed fact TRZ/Hess got a waiver from Coachman.  Opening Brief at 18.

[22] That something "might" have happened is speculation, which is not enough to support TRZ/Hess's burden.  That there "might" have been a breach certainly is not "all material facts essential to show the elements of that cause of action."  Salazar v. American Sterilizer Co., 5 P.3d 357, 363 (Colo. App 2000).

In any event, the Colorado Court of Appeals has rejected TRZ/Hess's argument:

> As to the applicable standard for determining when the statute of limitations begins to run, we reject defendant's contention that inquiry notice triggers the discovery rule.

Salazar, 5 P.3d at 363; Micale v. Bank One N.A. (Chicago), 382 F. Supp. 2d 1207, 1225 (D. Colo. 2005) ("Inquiry notice does not trigger the discovery rule."). TRZ/Hess cites no cases applying inquiry notice. The Court should follow Salazar and Micale and reject TRZ/Hess's attempt to hold Plaintiffs to an inquiry notice standard.

**E.     The Evidence that TRZ/Hess Wrongfully Concealed Information from Plaintiffs Is Sufficient to Equitably Toll the Statute of Limitations**

Plaintiffs set forth their equitable tolling agreement both below, App. 4979-82, and in Plaintiffs' Opening Brief at 68-69. Substantial evidence supports the conclusion that (i) Plaintiffs and TRZ/Hess were in a "special relationship of trust and confidence," which meant (ii) TRZ/Hess had a duty to disclose to Plaintiffs information that "in equity and good conscience" should be disclosed; and (iii) TRZ/Hess breached that duty by not disclosing to Plaintiffs the TRZ/Hess-Brigham/Statoil Agreement and other material information. Opening Brief at 68-69. The undisputed facts show that TRZ/Hess knew of the TRZ/Hess-Brigham/Statoil Agreement, Plaintiffs did not, that Plaintiffs did not compete for

leases in the AMI, and a pattern of concealment,[23] and satisfy all of the fraudulent concealment factors for equitable tolling.

The District Court rejected Plaintiffs' tolling argument only because "the Court has found that plaintiffs had actual knowledge of all facts necessary to discover the alleged breach no later than September 13, 2010." App. 5674. That was erroneous. Opening Brief at 60-67. Based on that error, the District Court flat out failed to consider Plaintiffs' equitable tolling argument on the merits. This was clearly erroneous and was an abuse of discretion. Thus, the Court should hold (i) the District Court abused its discretion in rejecting or not considering Plaintiffs' equitable tolling argument and (ii) TRZ/Hess's fraudulent concealment of material information from Plaintiffs equitably tolled the running of the statute of limitations.[24]

---

[23] Smith v. Boyett, 908 P.2d 508, 514-15 (Colo. 1995) (inference of intent to conceal from pattern of concealment).

[24] TRZ/Hess argues that its disclosure of the AMI Agreement to Brigham/Statoil was not a breach. TRZ/Hess's Brief at 40-43. This is absurd. Nothing in the confidentiality provision allows disclosure as a part of due diligence. Disclosure to any third party is prohibited; Brigham/Statoil was a third party and competitor. There are no exceptions. Accordingly, summary judgment should enter for Plaintiffs.

TRZ/Hess also argues another ground for affirmance on the breach of confidentiality claim is that TRZ/Hess's breach did not cause Plaintiffs' damages. This is directly contradicted by their acknowledgement that Brigham/Statoil would not have done the TRZ/Hess-Brigham/Statoil Agreement otherwise. TRZ/Hess's

## IX. PLAINTIFFS' WORKING INTEREST DAMAGES ARE RECOVERABLE

Lost opportunity damages can be recovered on a breach of contract claim. Opening Brief at 69-72. In response, TRZ/Hess's primary argument is that contract law prohibits recovery of lost opportunity damages and/or such damage cannot exceed expectation damages. TRZ/Hess does not dispute the evidence that if Plaintiffs had known of the breach, Plaintiffs then would have competed for leases and acquired over 6000 acres of leases in the AMI through the end of the AMI term and the value of such leases would have been very significant. Opening Brief at 70. The fact that expectation damages are the "traditional" contract remedy, Giampapa v. Am. Fam. Mut. Ins. Co., 64 P.3d 230, 238, 251 (Colo. 2003), does not preclude lost opportunity damages. Restatement (Second) of Contracts § 344(b); The Superlative Group, Inc. v. WIHO, L.L.C., 2014 WL 1385533, *5 (D. Kan. Apr. 9, 2014); Designer Direct, Inc. v. DeForest Redevelopment Auth., 368 F.3d 751, 752 (7th Cir. 2004). Since TRZ/Hess materially breached the confidentiality provision (which discharged Plaintiffs from their obligation not to

---

Brief at 12; see also App. 4985-87, and Section IX below. TRZ/Hess's claim that there were many leases left to acquire (TRZ/Hess Brief at 64) is obviously contradicted by the fact Brigham/Statoil acquired over 2500 acres of new leases after TRZ/Hess stopped acquiring new leases. The District Court did not address TRZ/Hess's lack of causation argument. App. 5675, n.22. This Court should reject it.

compete), and Plaintiffs did not know of the breach which would have allowed them to compete, under these circumstances the Colorado Supreme Court would not limit Plaintiffs to the amount they would have received if TRZ/Hess had not breached the agreement. Thus, Plaintiffs can recover their working interest damages even if they are greater than Plaintiffs' expectation damages, and the Court should reverse.[25]

## X.   <u>CONCLUSION</u>

The Court should reverse the District Court's erroneous rulings on dismissal, reconsideration and summary judgment.

---

[25] TRZ/Hess asserts that an additional ground for affirmance on Plaintiffs' working interest damages is that TRZ/Hess's breach of the AMI Agreement's confidentiality provision was not a material breach. The Court should reject this outrageous assertion. In TRZ/Hess's motion for summary judgment on working interest damages the sole argument was such damages were not recoverable on a breach of contract claim. App. 525-32. In its second motion for summary judgment, TRZ/Hess added the argument that its breach of confidentiality was not material. App. 3211-13. In Plaintiffs' motion for summary judgment on liability, Plaintiffs showed that TRZ/Hess's breach of confidentiality was material. App. 2105-06, ¶¶8-11; App. 2928-30, ¶¶8-11; App. 2934-35. The District Court never ruled on TRZ/Hess's nonmateriality argument. App. 5675, n.22. This Court should reject it.

DATED:  October 11, 2017.

Respectfully submitted,

*s/ Tamir I. Goldstein*
Tamir I. Goldstein
John W. Mill
Joseph C. Daniels
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone:  (303) 297-2900
tgoldstein@shermanhoward.com
jmill@shermanhoward.com
jdaniels@shermanhoward.com

ATTORNEYS FOR
PLAINTIFFS-APPELLANTS

<h1 style="text-align: center;"><u>CERTIFICATE OF COMPLIANCE</u></h1>

**Section 1. Word count**

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains 9692 words.

Complete one of the following:

- ■ I relied on my word processor to obtain the count and it is Word Version 2010:

- ☐ I counted five characters per word, counting all characters including citations and numerals.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Dated: October 11, 2017.

*s/ Tamir I. Goldstein*
Tamir I Goldstein

## CERTIFICATIONS

1.      I hereby certify all required privacy redactions have been made.

2.      I hereby certify that the hard paper copies of this brief which are being submitted to the Court are exact copies of the PDF version of this brief which was filed electronically via the Court's ECF system.

3.      I hereby certify that a copy of the foregoing **PLAINTIFFS-APPELLANTS' REPLY BRIEF**, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the most recent version of a commercial virus scanning program (System Center Endpoint Protection, updated 10/11/17), and according to the program are free of viruses.

Dated:  October 11, 2017.

_s/ Linda Erickson_
Linda Erickson, Legal Secretary

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 11, 2017, she caused the foregoing

**PLAINTIFFS-APPELLANTS' REPLY BRIEF** to be served via the Court's

ECF system on the following:

Elizabeth J. Hyatt, Esq.
Ogborn Mihm, LLP
1700 Broadway, Suite 1900
Denver, CO 80290
Elizabeth.hyatt@omtrial.com
*Attorneys for Defendant-Appellee Hess*
*Bakken Investment II, LLC*

Robert Safi, Esq.
Ashle L. McMillan, Esq.
Abigail C. Noebels, Esq.
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
rsafi@susmangodfrey.com
amcmillian@susmangodfrey.com
anoebels@susmangodfrey.com
*Attorney for Defendant-Appellee Hess*
*Bakken Investment II, LLC*

Craig L. Stahl, Esq.
Andrews Kurth Kenyon LLP
10001 Woodloch Forest Drive
Suite 200
The Woodlands, TX 77380
craigstahl@andrewskurth.com
*Attorneys for Defendant Statoil*
*Oil & Gas, LP*

Frank C. Porada, Esq.
FisherBroyles, LLP
1400 Sixteenth Street, Suite 400
Denver, CO 80202
Frank.Porada@FisherBroyles.com
*Attorneys for Defendant-Appellee*
*Statoil Oil & Gas LP*

Alexis J. Gomez, Esq.
Cameron P. Pope, Esq.
Andrews Kurth Kenyon LLP
600 Travis, Suite 4200
Houston, TX 77002
agomez@andrewskurth.com
cpope@andrewskurth.com
*Attorneys for Defendant Statoil*
*Oil & Gas, LP*

*s/ Linda Erickson*
Linda Erickson, Legal Secretary

Active/46705637.8