No. 17-1010

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

SPRING CREEK EXPLORATION & PRODUCTION CO., LLC
AND GOLD COAST ENERGY, LLC,

*Plaintiffs-Appellants*,

vs.

HESS BAKKEN INVESTMENT, II, LLC, F/K/A TRZ ENERGY LLC
AND STATOIL OIL & GAS LP F/K/A BRIGHAM OIL & GAS LP,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Colorado, Hon. Philip A. Brimmer
No. 1:14-cv-00134-PAB-KMT

# STATOIL OIL & GAS LP's RESPONSE TO
# PETITION FOR PANEL REHEARING

Alexis J. Gómez
Cameron P. Pope
HUNTON ANDREWS KURTH LLP
600 Travis St., Suite 4200
Houston, TX 77002
(713) 220-4200
(713) 220-4285 (Fax)

*Counsel for Defendant-Appellee
Statoil Oil & Gas LP*

# Table Of Contents

Table Of Authorities ........................................................................ ii

Statement Regarding Separate Briefing......................................... iv

Introduction .................................................................................... 1

Response Arguments ....................................................................... 4

    A.    The ORRI Assignment expressly carves out
           the AMI Agreement ....................................................... 4

    B.    Statoil is not bound to the ORRI
           Assignment between Plaintiffs and Hess ...................... 7

           1.    The ORRI Assignment cannot turn the
                  AMI's personal covenants into real
                  covenants ............................................................. 7

           2.    Statoil did not take the ORRI
                  Assignment ......................................................... 11

    C.    The merger doctrine does not extinguish
           Statoil's express disclaimer of the AMI
           Agreement.................................................................... 13

    D.    Plaintiffs' attempted analogy cannot
           withstand any scrutiny................................................ 16

Conclusion...................................................................................... 17

Certificate Of Compliance ............................................................ 19

Certificate Of Digital Submission And Privacy
           Redactions.............................................................................. 20

Certificate Of Service.................................................................... 21

# Table Of Authorities

**Cases**

*Beeter v. Sawyer Disposal LLC,*
    771 N.W.2d 282 (N.D. 2009) ............................................9, 10, 11

*Burgess Constr. Co. v. M.Morrin & Son Co., Inc.,*
    526 F.2d 108 (10th Cir.1975) ...................................................... 4

*Coe v. Crady Davis Corp.,*
    60 P.3d 794 (Colo.App.2002) ..................................................... 16

*Golden v. SM Energy Co.,*
    826 N.W.2d 610 (N.D. 2013) .............................................*passim*

*Hammerquist v. Warburton,*
    458 N.W.2d 773 (S.D.1990) ...................................................... 15

*Sierra Club v. Hodel,*
    848 F.2d 1068 (10th Cir.1988), *overruled on other*
    *grounds by Vill. of Los Ranchos De Albuquerque v.*
    *Marsh*, 956 F.2d 970 (10th Cir.1992)........................................ 8

*St. Augustine Pools, Inc. v. James M. Barker, Inc.,*
    687 So. 2d 957 (Fla.Dist.Ct.App.1997)....................................... 4

*Wehner v. Schroeder,*
    354 N.W.2d 674 (N.D.1984) .................................................14, 15

*Zimmer v. Bellon,*
    153 N.W.2d 757 (N.D. 1967) .................................................... 14

**Statutes and Rules**

N.D. Cent. Code § 47-04-25 ............................................................ 10–11

Fed. R. App. P. 32(a)(7)(c)................................................................ 19

10th Cir. R. 31.3(B) ........................................................................iv

**Other Authorities**

26 C.J.S. Deeds § 91c ............................................................. 14

26A C.J.S.Deeds § 223 (2001 & Supp. 2018) ................................. 15

## Statement Regarding Separate Briefing

Pursuant to 10th Cir. R. 31.3(B), Statoil certifies that separate briefing (as between Hess and Statoil) is necessary to clearly and fairly respond to the petition for rehearing. Plaintiffs-Appellants seek rehearing on two discrete issues, the first against Statoil only and the second against Hess only.

# Introduction

The Panel did not "overlook" or "misapprehend" Appellants' "merger doctrine" argument against Statoil, as Plaintiffs-Appellants contend. Pet. for Rehearing ("Pet.") at 1. To the contrary, the Court's opinion accurately summarizes Plaintiffs' argument and highlights its fatal deficiencies.

The Court correctly held (and Plaintiffs do not challenge on rehearing) that the AMI Agreement between Plaintiffs and Hess is a personal covenant under North Dakota law, not a real covenant running with the land. Opinion at 39. As such, because Statoil is not a party to the AMI Agreement, and "Statoil expressly disclaimed any obligations under the AMI Agreement in the Hess-Statoil Settlement Agreement," Statoil is not bound to the AMI Agreement. *Id.* at 40. Statoil was thus not required to assign overriding royalty interests to Plaintiffs on leases that Statoil acquired on its own (the "New Leases").

Plaintiffs argue that the AMI Agreement was merged into the so-called "ORRI Assignment," the document through which Hess—not Statoil—assigned overriding royalty interests in the Existing Leases to Plaintiffs. But as the Court's Opinion recognizes, the ORRI Assignment includes a clause expressly providing that the AMI Agreement "'*shall not be merged into this*

*[ORRI] Assignment.*'" *Id.* at 41 (quoting Vol. XI, 1865, ¶ B) (italics in original).

Furthermore, even assuming that the AMI Agreement could somehow be merged into the ORRI Assignment despite the latter's unambiguous "shall not be merged" clause, Statoil would still not have become unwillingly bound to the AMI Agreement through the ORRI Assignment. Statoil is *not* a party to the ORRI Assignment. The ORRI Assignment could not bind Statoil, therefore, unless (1) the ORRI Assignment runs with the land, or (2) Statoil contracted to take the ORRI Assignment. *See* Opinion at 34-45; *Golden v. SM Energy Co.*, 826 N.W.2d 610 (N.D. 2013). Plaintiffs have waived any "runs with the land" argument, and in any event it fails as a matter of governing North Dakota law. Nor did Statoil contract to take the ORRI Assignment.

Plaintiffs argue that Statoil took the ORRI Assignment in the so-called "Second Assignment,"[1] under which Hess assigned the Existing Leases to Statoil to effectuate the Hess-Statoil Settlement Agreement. But the Second Assignment merely assigns to Statoil "all of [Hess's] right, title and interest" in the Existing Leases. Vol. VII, 1256-57. The Second Assignment says

---

[1] The "First Assignment" was Plaintiffs' assignment of the Existing Leases to Hess. Opinion at 7.

*nothing* about the ORRI assignment (just as the Second Assignment says nothing about the AMI Agreement). *Id.*; Pet. at 8 ("The [Second] Assignment does not specifically reference or expressly assume the ORRI assignments"). The Second Assignment thus does not assign the ORRI Assignment to Statoil, "for contracts generally do not assign other contracts (let alone 'expressly') without mentioning the earlier contract by name." Opinion at 40.

Plaintiffs also argue that Statoil is bound by the ORRI Assignment because it is paying overriding royalties on Existing Leases that Hess created in the ORRI Assignment. Plaintiffs, however, do not cite any authority for their argument. Statoil is paying these overriding royalties on Existing Leases because underpaid royalty owners may recover against a subsequent lease assignee under "the equitable principles of detrimental reliance and unjust enrichment." *Golden*, 826 N.W.2d at 620. Statoil is not unwillingly bound to the ORRI Assignment, much less to the AMI Agreement.

The Court thus did not err in rejecting Plaintiffs' argument.

## Response Arguments

### A. The ORRI Assignment expressly carves out the AMI Agreement

At their core, all of Plaintiffs' arguments rest upon the first clause of paragraph B of the ORRI Assignment, which provides that the ORRI Assignment "is made subject to" the Participation Agreement and the AMI Agreement. Vol. XI, 1865, ¶ B. Plaintiffs argue, without citing any authority, that this clause "incorporate[s] by reference the obligations of the AMI Agreement." Pet. at 9. The Court was rightly "unconvinced" by Plaintiffs' argument. Opinion at 41. Rather than incorporating the AMI Agreement, paragraph B of the ORRI Assignment specifically *excludes* the AMI Agreement from the ORRI Assignment.

"The words 'subject to' usually indicate a condition to one party's duty of performance and not a promise by the other." *Burgess Constr. Co. v. M. Morrin & Son Co., Inc.*, 526 F.2d 108, 113 (10th Cir. 1975). In paragraph B's first clause, the ORRI assignment is not incorporating the AMI Agreement by reference. *See St. Augustine Pools, Inc. v. James M. Barker, Inc.*, 687 So. 2d 957, 958 (Fla. Dist. Ct. App. 1997) (citing *Burgess Construction* and holding that a subcontract which was made "subject to" the general contract did not incorporate the general contract's arbitration language into the subcontract).

Rather, paragraph B's first clause is merely an acknowledgement of the existence of the Participation Agreement and AMI Agreement, and of Hess's duty under these two agreements to grant overriding royalty interests in the Existing Leases. Paragraph B of the ORRI Assignment then unambiguously provides that the Participation Agreement and AMI Agreement are *not* merged into ORRI Assignment, and that in any conflict between those Agreements and the ORRI Assignment, the Participation Agreement and AMI Agreement control.

The Court must "be wary of viewing clauses or phrases in isolation, instead reading them in the context of the entire contract, seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." Opinion at 19 (citations omitted). The second clause of paragraph B explicitly excludes from the ORRI Assignment's ambit all covenants in the AMI Agreement that "survive the delivery" of the ORRI Assignment. Vol. XI, 1865, ¶ B. And the third and fourth clauses of paragraph B further confirm that the Participation Agreement and AMI Agreement are *not* incorporated or merged into the ORRI Assignment:

> B. This Assignment is made subject to that certain Participation Agreement dated October 8, 2009 by and between TRZ and Coachman (the "Agreement"), and that certain Area of Mutual Interest Agreement dated October 8, 2009 by and between TRZ, Coachman, Spring Creek and Gold Coast (the "AMI"). The Agreement and the AMI contain certain representations, warranties and agreements between the Parties, some of which survive the delivery of this Assignment, as provided for therein, and ==shall not be merged into this Assignment== or be otherwise negated by the execution or delivery of this Assignment. This Assignment shall not be construed to amend the Agreement or the AMI or vary the rights and obligations of the Parties from those set forth in the Agreement and the AMI. In the event of any conflict between this Assignment and the Agreement or the AMI, the terms of the Agreement or AMI, as applicable, shall control.

*Id.* (highlighting added); *see* Opinion at 41.

Hess's covenant in the AMI Agreement to assign overriding royalty interests to Plaintiffs on any leases that Hess acquired during the AMI's three-year term survived the delivery of the ORRI Assignment. *See* Vol. IX, 1663; Vol. XXXII, 5663; Opinion at 4; Statoil Br. at 55-57. Under the ORRI Assignment's express terms, therefore, this AMI covenant "shall not be merged into [the ORRI] Assignment." Vol. XI, 1865, ¶ B. The AMI covenant continued to exist independently of the ORRI Assignment and bind Hess.

Plaintiffs argue (without citing any evidence) that the intent of the "shall not be merged" language in paragraph B's second clause was merely to "put all potential purchasers" on notice that by taking title to the Existing Leases, "they would be subject to and bound by" the AMI Agreement. Pet. at 7. Plaintiffs' argument, however, is in direct contradiction with paragraph B, which unambiguously states that the AMI covenant at issue "*shall not be merged into* this [ORRI] Assignment." Vol. XI, 1865, ¶ B

(emphasis added); *see* Opinion at 41-42. The ORRI Assignment thus does not incorporate the AMI Agreement.

**B.      Statoil is not bound to the ORRI Assignment between Plaintiffs and Hess**

Even if the ORRI Assignment's "subject to" clause could incorporate the AMI Agreement, Plaintiffs would still have to establish that the law binds Statoil to the ORRI Assignment. Plaintiffs cite no such law. Statoil is not subject to the ORRI Assignment, much less to the AMI Agreement.

**1.      The ORRI Assignment cannot turn the AMI's personal covenants into real covenants**

Plaintiffs argue that Statoil became subject to the AMI Agreement through the ORRI Assignment because:

(1)      the ORRI Assignment is a recorded conveyance of "a real property interest";

(2)      the ORRI Assignment "burdened [the] Existing Leases acquired by Hess with ORRIs in favor of Plaintiffs" at the time Statoil entered into the Second Assignment; and

(3)      the ORRI Assignment "is 'made subject to' the AMI Agreement."

Pet. at 3; *id.* at 6-7. In other words, without explicitly saying so, Plaintiffs' argument is that the ORRI Assignment is a real covenant that runs with the land, and, through its "subject to"

clause, turns the personal covenants in the AMI Agreement into real covenants that run with the land.

Plaintiffs did not make this argument in their opening brief or even in their reply brief; Plaintiffs argued only that the AMI Agreement runs with the land.[2] *See* Opening Br. at 3-4, 45-46; Reply Br. at 27-30. The Court therefore should not consider Plaintiffs' new argument on rehearing. *Sierra Club v. Hodel*, 848 F.2d 1068, 1100-01 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) ("Petitions for rehearing under Fed. R. App. P. 40(a) are permitted to enable parties to notify, and to correct, errors of fact or law on the issues already presented; they are not meant to permit parties to assert new grounds for relief.").

In addition to being waived, Plaintiffs' new argument fails as a matter of North Dakota law for at least two reasons. *First*, Plaintiffs have failed to establish that the ORRI Assignment is a real covenant that runs with the land. "'[I]f a covenant or deed restriction benefits the grantor personally, and serves no real benefit to the land, then the covenant is personal in nature and does not 'run with the land' upon a subsequent sale of the

---

[2] Nor did Plaintiffs argue in the trial court that the ORRI Assignment runs with the land. *See* Vol. IX, 1648 (moving for summary judgment on the ground that "[t]he covenants in the AMI Agreement" run with the land).

property.'" Opinion at 36 (quoting *Beeter v. Sawyer Disposal LLC*, 771 N.W.2d 282, 286 (N.D. 2009)). Like the AMI Agreement, the ORRI Assignment on Existing Leases benefits Plaintiffs personally; there is no evidence in the record that the ORRI Assignment serves any real benefit to the land.[3] *See Beeter*, 771 N.W.2d at 286 (holding that covenant requiring payment of percentage of revenues did not run with the land). Nor is there any evidence that the parties intended for the ORRI Assignment to run with the land.

*Second*, even assuming that the ORRI Assignment runs with the land, as a matter of law its "subject to" language cannot turn the personal covenants in the AMI Agreement into real covenants that run with the land. To allow this kind of bootstrapping would turn "the law of assignments on its head." *Golden*, 826 N.W.2d at 618. Plaintiffs' construction would turn the AMI Agreement's personal covenants, "as well as any other personal covenant, into a covenant that runs with the land and obliterates the

_____

[3] That the ORRI Assignment is a personal covenant between Hess and Plaintiffs is confirmed by *Golden*, which recognizes that causes of action for overriding royalty disputes against subsequent lease assignees are equitable in nature, not contractual. 826 N.W.2d at 620. If the document that created the overriding royalty itself burdened the leasehold estate and bound subsequent lease assignees, then the causes of action would be contractual.

requirement that an assignee consent to be responsible for the obligations of the assignor." *Golden*, 826 N.W.2d at 618.

In *Beeter*, for example, the parties' contract provided that the seller would receive six percent of the revenue derived from any expansion or extension of the buyer's operations, and that this covenant would run with the land. 771 N.W.2d at 284-85.[4] The North Dakota Supreme Court held that the covenant was a personal covenant, notwithstanding the parties' stated intent that it be a real covenant running with the land. *Id.* at 286.

Under Plaintiffs' argument, the parties in *Beeter* could have converted their personal covenant into a real covenant by simply entering into a separate real covenant running with the land, and providing that this separate real covenant was "subject to" to the six-percent payment personal covenant. Plaintiffs' argument is not North Dakota law. A party cannot make a personal covenant into a real covenant by making another real covenant "subject to" the personal covenant.

"[T]he *only* covenants which run with the land are those specified [by statute] and those which are incidental thereto.'" Opinion at 35-36 (italics and brackets in original) (quoting N.D.

---

[4] As the Court has observed, *Beeter* is instructive because "North Dakota law treats AMI covenants as it would any other covenant." Opinion at 39.

Cent. Code § 47-04-25). "The rule is settled that regardless of the intention of the parties, a covenant will run with the land and will be enforceable against a subsequent purchaser of the land at the suit of one who claims the benefit of the covenant, only if *the covenant [itself] complies* with certain legal requirements." *Beeter*, 771 N.W.2d at 286 (citation omitted; emphasis added). As this Court has held, AMIs and other personal covenants do *not* comply with the requirements. *See* Opinion at 39.

"[T]he [AMI] covenants at issue in this case do not run with the land under North Dakota law." *Id.* at 39. Even assuming the ORRI Assignment runs with the land—and Plaintiffs have never argued or established that it does—its "subject to" clause could not (and did not) turn the personal AMI covenants into real covenants that run with the land.

## 2. Statoil did not take the ORRI Assignment

Nor does the law of assignments bind Statoil to the ORRI Assignment. "An assignee is responsible only for the obligations of the assignor which the assignee contracts to undertake." *Golden v. SM Energy Co.*, 826 N.W.2d 610, 615-16 (N.D. 2013). Generally, a party is not liable for an obligation under a contract unless the party consents. *See id.* at 616 (citation omitted). Statoil clearly did not consent to be bound to the ORRI Assignment, as evidenced on

the face of the Second Assignment. Indeed, the Second Assignment does not even reference the ORRI Assignment.

The Second Assignment assigns to Statoil all of the "right, title and interest" owed *to* Hess in the Existing Leases, not those owed *by* Hess:

> For Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor grants, bargains, sells, conveys, assigns, transfers, and delivers unto Assignee all of Assignor's right, title and interest whether present, contingent or reversionary, in and to the following (collectively, the "Assets"):
>
> A. The oil and gas leases specifically described in Exhibit A, including all leasehold estates, royalty interests, overriding royalty interests, net profits interests, and similar interests (the "Leases"), and the lands covered thereby or lands pooled or unitized therewith (the "Lands");

*Id.* at 1256, ¶ A. On its face, the Second Assignment says nothing about the ORRI Assignment between Plaintiffs and Hess (just as it says nothing about the AMI Agreement between Plaintiffs and Hess).[5] *See* Vol. VII, 1256-57. "And that omission creates a problem for Plaintiffs, for contracts generally do not assign other contracts (let alone 'expressly') without mentioning the earlier contract by name." Opinion at 40. The Second Assignment thus does not transfer or assign to Statoil any duties or obligations that

---

[5] Plaintiffs previously argued that the Second Assignment's conveyance of "overriding royalty interests" included the ORRI Assignment. *See* Vol. XXXII, 5662. The District Court correctly held that "Plaintiffs' argument is without merit." *Id.* Plantiffs do not reurge the argument in their petition for rehearing. The conveyance was of overriding royalty interests owed *to* Hess in the Existing Leases, not those owed by Hess under the ORRI Assignment.

Hess owed Plaintiffs under the ORRI Assignment. Those duties and obligations remained with Hess.

Even assuming that the Second Assignment could somehow assign the ORRI Assignment to Statoil without mentioning it by name, "[t]he mere assignment of a bilateral executory contract may not be interpreted as a promise by the assignee to assume the performance of the assignor's duty." *Golden*, 826 N.W.2d at 616. Thus, under the governing North Dakota law of assignments, any hypothetical assignment to Statoil in the Second Assignment of Hess's rights under the ORRI Assignment may not be interpreted as a promise by Statoil to assume the performance of Hess's duties under the ORRI Assignment.

## C. The merger doctrine does not extinguish Statoil's express disclaimer of the AMI Agreement

Furthermore, even if Statoil had taken the ORRI Assignment in the Second Assignment (it did not), and the ORRI Assignment incorporated the AMI Agreement (it did not), Statoil would still not be bound to the AMI Agreement. Once again, "Statoil expressly disclaimed any obligations under the AMI Agreement in the Hess-Statoil Settlement Agreement." Opinion at 40. Thus, any hypothetical assignment of the ORRI Assignment to Statoil would not have included the AMI Agreement.

Plaintiffs argue that Statoil's express disclaimer of any obligations under the AMI Agreement must be ignored under the merger doctrine. Plaintiffs assert that the Second Assignment "extinguished" the Hess-Statoil Settlement Agreement and "the Court must look to [the Second] Assignment 'alone' to determine 'the rights of the parties.'" Pet. at 5-6 (quoting *Wehner v. Schroeder*, 354 N.W.2d 674, 679 (N.D. 1984)). In other words, Plaintiffs argue that the merger doctrine caused the disclaimer and every other provision of the Hess-Statoil Settlement Agreement to be snuffed out the moment the Second Assignment was executed. Plaintiffs are misapplying the merger doctrine; it does not "extinguish" the Hess-Statoil Settlement Agreement, and Plaintiffs cite no case law whatsoever suggesting otherwise.

The merger doctrine simply provides that, as a general rule, "'a deed made in full execution of a contract of sale of land merges the provisions of the contract therein,'" so that "'the deed alone must be looked to for determination of the rights of the parties, in the absence of fraud or mistake.'" *Zimmer v. Bellon*, 153 N.W.2d 757, 761 (N.D. 1967) (quoting 26 C.J.S. Deeds § 91c). It does not "extinguish" the contract of sale. In the case on which Plaintiffs rely, for example, the contract for deed contained a mineral reservation, but the subsequent warranty deed contained no mineral reservation. *Wehner*, 354 N.W.2d at 675-76. The court

allowed reformation of the deed based on evidence of mutual mistake. *Id.* at 679.

An "exception or qualification to the merger rule occurs where the contract contains provisions that delivery of the deed does not fulfill. As to those provisions, the contract is not merged in the deed, and the contract remains in force until the contract has been fully performed." 26A C.J.S. Deeds § 223 (2001 & Supp. 2018).

This critical qualification "applies to contractual agreements clearly not intended to be merged into the deed, and the intent of the parties is controlling." *Id.*; *see Hammerquist v. Warburton*, 458 N.W.2d 773, 776 (S.D. 1990) (recognizing that the merger rule does not apply to "separate, collateral undertakings unassociated with questions of title, possession or quantity of land," and holding that restrictive covenant found in contract for deed did not merge into warranty deed) (citation omitted). "Covenants in an antecedent contract that are not intended by the parties to be incorporated in the deed, or that are not necessarily satisfied by the execution and delivery of the deed, are collateral agreements and are preserved from merger. Absent express language to the contrary, delivery of a deed extinguishes only covenants pertaining to title, possession, quantity, or emblements of the

land." *Coe v. Crady Davis Corp.*, 60 P.3d 794, 796 (Colo. App. 2002) (internal citation omitted).

Here, the undisputed intent of the parties to the Hess-Statoil Settlement Agreement, as explicitly expressed in the Letter Agreement of Settlement and the Indemnity Agreement, and as testified to by both Hess and Statoil in this litigation, was to *not* assign the AMI Agreement to Statoil in the Second Assignment. *See* Vol. VII, 1242-43, 1310. Because the express disclaimer of the AMI Agreement was not "intended by the parties to be incorporated in the deed," the merger doctrine is irrelevant. *Coe*, 60 P.3d at 796.

As a matter of law, Statoil's express disclaimer of the AMI Agreement is not merged into and extinguished by the Second Assignment. The disclaimer survives, and is controlling here.

## D. Plaintiffs' attempted analogy cannot withstand any scrutiny

Lastly, Plaintiffs contend that the "situation here is no different" from a situation where "parties enter into a Master Services Agreement and then issue various Work Orders that each provide the Work Order is subject to the Master Services Agreement." Pet. at 9. According to Plaintiffs, if "one of the Work Orders is assigned to a non-party, that non-party becomes subject to the Master Services Agreement even if the assignment

agreement does not expressly reference the Master Services Agreement . . ." *Id.* Plaintiffs' analogy is notably unsupported by any authority, and falls apart upon the slightest reflection.

The AMI Agreement is not a Master Services Agreement to construct some improvement on land that Plaintiffs or Hess already owned. Rather, the AMI Agreement sought "to impose real covenants running with land that none of [the Plaintiffs or Hess] had any interest in." Opinion at 38. Equally, the Existing Leases are not Work Orders, and do not provide that they are subject to the AMI Agreement. And Statoil did not become subject to the AMI Agreement in the Second Assignment; Statoil expressly *rejected* being bound by the AMI Agreement.

## Conclusion

This Court correctly affirmed the District Court. The AMI covenants do not apply to the "New Leases—that is, oil and gas leases in the Tomahawk Prospect that were acquired by Statoil *from entities other than Spring Creek, Gold Coast, or Hess.*" *Id.* (italics in original). The Panel's analysis and conclusions are well-supported by the record and the law, and should not be disturbed. Plaintiffs-Appellants' petition for panel rehearing should be denied.

April 2, 2018

Respectfully submitted,

s/Alexis J. Gómez
_____

Alexis J. Gómez
Cameron P. Pope
Hunton Andrews Kurth LLP
600 Travis St., Suite 4200
Houston, TX 77002
(713) 220-4200
(713) 220-4285 (Fax)

*Counsel for Defendant-Appellee*
*Statoil Oil & Gas LP*

# Certificate Of Compliance

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains 3,425 words. I relied on my word processor to obtain the count and it is Word Version 2010. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Dated: April 2, 2018

_s/ Cameron Pope_
Cameron P. Pope
Attorney for Defendant-Appellee
Statoil Oil & Gas LP

## Certificate Of Digital Submission
## And Privacy Redactions

I hereby certify that a copy of the foregoing Statoil Oil & Gas LP's Response to Petition for Panel Rehearing, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the Sophos Endpoint Security and Control version 10.7, most recently updated on April 2, 2018, and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made.

By: _s/ Teresa G. Hicks_
        Teresa G. Hicks
        Legal Secretary (Digital)

# Certificate Of Service

I hereby certify that on April 2, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Tamir I. Goldstein
tgoldstein@shermanhoward.com
John W. Mill
jmill@shermanhoward.com
Joseph C. Daniels
jdaniels@shermanhoward.com
SHERMAN & HOWARD L.L.C.
633 Seventeenth St., Suite 3000
Denver, CO 80202

*Attorneys for Plaintiffs-Appellants*

Elizabeth J. Hyatt, Esq.
elizabeth.hyatt@omtrial.com
OGBORN MIHM, LLP
1700 Broadway, Suite 1900
Denver, CO 80290

*Attorneys for Defendant-Appellee*
*Hess Bakken Investment II, LLC*

Robert Safi, Esq.
rsafi@susmangodfrey.com
Ashle L. McMillan, Esq.
amcmillian@susmangodfrey.com
Abigail C. Noebels, Esq.
anoebels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002-5096

*Attorney for Defendant-Appellee*
*Hess Bakken Investment II, LLC*

s/ *Cameron P. Pope*
Cameron P. Pope